RAINEY LAW, P.C.
Ingrid M. Rainey (Bar No. 272649)
Evelina M. Serafini (Bar No. 187137)
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (949) 842-5278
E-mail: Ingrid@raineylawpc.com
E-Mail: Evelina@raineylawpc.com

*Attorneys for Plaintiff Freight Essentials, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREIGHT ESSENTIALS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>UNIX PACKAGING LLC, KOUROSH MELAMED, and DOES 1 through 5<br><br>Defendants. | CASE NO. 2:25-cv-1318<br><br>**PLAINTIFF'S COMPLAINT** |

Plaintiff Freight Essentials, LLC is informed and believes and thereon alleges the following claims against Defendants UNIX Packaging LLC, Kourosh Melamed, and DOES 1 through 5.

///

///

///

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because this matter involves complete diversity of the parties and an amount in controversy that exceeds Seventy-Five Thousand Dollars ($75,000.00).

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to both Plaintiff's and claims occurred and/or had a substantial impact in this district.

## THE PARTIES

3. Plaintiff Freight Essentials LLC ("**Plaintiff**") is, and was at all times relevant hereto, a Florida limited liability company with a principal business address at 1830 South Ocean Drive, Unit 4808, Hallandale Beach, FL 33009.

4. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, Defendant Unix Packaging, LLC ("**UNIX**") is a California limited liability company with its principal place of business at 9 Minson Way, Montebello, California 90640, and doing business in the State of California.

5. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned here, Defendant Kourosh Melamed ("**Melamed**") is the President of UNIX and was and is a resident of the State of California, County of Los Angeles. Plaintiff is further informed and believes, and on that basis alleges, that at all times mentioned herein Melamed was an owner, director, officer, member, manager, agent, representative, and/or employee of UNIX and is now, and at all times mentioned herein was acting in conjunction with the other defendants.

6. The true names and capacities, whether individual, corporate, or otherwise of the defendants named in this Complaint as DOES 1 through 5, inclusive, are unknown to Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that each defendant named herein as a DOE contributed to or caused Plaintiff's alleged

damages. Plaintiff will move to amend this Complaint when the true names and capacities of said fictitiously named defendants have been ascertained.

7. From time to time, UNIX, Melamed, and DOES 1 through 5 shall be collectively referred to as "**Defendants**."

8. Plaintiff is informed and believes, and on that basis alleges, that Defendants were acting as an agent, conspirator, partner, joint venturer, alter ego, and/or employee of each other, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of the other; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

9. Plaintiff is informed and believes, and on that basis alleges, that UNIX is, and at all times mentioned herein was, owned and controlled by Melamed; that there exists, and at all times mentioned herein has existed, a unity of interest and ownership between and among UNIX and Melamed, such that any individuality and separateness of UNIX and Melamed has ceased, if ever the same existed; that UNIX is a mere shell, instrumentality and/or conduit through which Melamed has carried on his business affairs, as if UNIX did not exist; and that Melamed is the alter ego of UNIX, in that he has completely dominated and controlled the business and affairs of UNIX, has commingled the funds and assets of UNIX with his own funds and assets, has caused or allowed UNIX to be under-capitalized and/or insolvent, has withheld funds of UNIX for his own benefit and to the detriment of UNIX's creditors, has transferred assets between and among himself and UNIX for no or inadequate consideration, has directed assets from UNIX for his own use and benefit, and/or has failed to properly maintain/segregate corporate records of UNIX. Accordingly, recognizing any separate

legal personage among UNIX and Melamed would sanction fraud and promote injustice.

## GENERAL ALLEGATIONS

10. This action arises out of Plaintiff's contractual relationship with Defendants to transport and deliver Defendants' products to various destinations.

11. Plaintiff operates a supply-chain and logistics business and contracts with its clients to arrange the loading, transportation, and delivery of supplies, materials, and products for various business concerns in the United States (wholesalers, retailers, warehouses, manufacturers, etc.).

12. Plaintiff is informed and believes and thereon alleges Defendants manufacture and bottle an array of beverages and have clients that include national brands and national grocers.

13. From at least May of 2024, Defendants hired Plaintiff to arrange the loading, transportation, and delivery of materials and final products ("**Transportation Services**") to Defendants and their customers in various states, including, in large measure, Southern California.

14. To facilitate these transactions, Plaintiff issued to and Defendants accepted written invoices with terms for each shipping event, with specific itemized charges which, per the terms documented in each invoice and applicable to each transaction, were due and payable within fourteen (14) days of receipt. Specifically, each invoice contains the following language:

> "Terms & Conditions:
> All charges are payable in US Dollars and are due and payable fourteen (14) days from the date of invoice (Net 14), unless otherwise agreed upon by Freight Essentials and Customer in writing. Invoices are subject to change after original invoiced date in the event of additional carrier charges, accessorial(s), lumpers, or other fees incurred. After an account reaches "past

due" status, Freight Essentials reserves the right to apply payments received towards the oldest or highest outstanding invoice balances. Overpayments do not accrue interest. Invoice payment is due within the agreed upon Net-Terms as notated within this invoice. At Net-60 days, a finance charge of 3% interest per month per late invoice will apply. Freight Essentials reserves the right to pursue any and all remedies available for damages or losses incurred, including, but not limited to, invoice collections costs, interest and penalty fees, and/or attorney's fees where applicable. All terms of services can be located at https://www.freightessentials.com/terms-of-service."

15. Additionally, each invoice contains the details necessary for the customer (UNIX) to remit payment via deposit or wire, as well as via credit card and phone payment options.

16. In return for the Transportation Services, UNIX agreed to pay Plaintiff in accordance with the rate structure set forth in each invoice and terms ("**Agreement**")

17. The Agreement was in full force and effect at all relevant times. (A True and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein).

18. Defendants retained Plaintiff's services with the express understanding and agreement that Plaintiff would deliver the cargo entrusted to them in good condition and in a timely manner. Accordingly, Defendants understood and agreed to remit payment for Plaintiff's services in full in just a timely manner per the terms of the parties' written agreement.

19. Plaintiff performed all of its obligations under the Agreement.

20. Defendants initially paid Plaintiff's invoices on time (e.g., in less than 60 days from receipt of the invoices). However, in or around July 2024, Defendants began failing to remit payment on invoices on time or at all and began accruing late fees starting at sixty days ("**Net-60**") overdue. This was a direct breach of the Agreement among the parties.

21. Plaintiff attempted to remedy the Defendants' delinquency via electronic communications and virtual meetings (video calls) with Melamed. On October 13, 2024, the Plaintiff, represented by CEO Dylan Admire ("**Mr. Admire**") and Managing Partner and Director of Operations Natasha Crawford ("**Ms. Crawford**") on one side and UNIX, represented by its President Melamed, on the other, discussed UNIX's aging invoices and a plan to resolve them.

22. On October 13, 2024, Mr. Admire and Ms. Crawford raised the serious problem of UNIX long-aging unpaid invoices, particularly those approaching and/or at ninety days ("**Net-90**"). Mr. Admire explained the risk to Plaintiff's relationship with its factoring company that Net-90 invoices posed. Accordingly, Melamed was asked to confirm and specifically lay out UNIX's ability to bring its account current (i.e., payoff over $338,000 on aging invoices) in order to continue using Plaintiff's Transportation Services. In response, Melamed repeatedly acknowledged the need for and importance of paying the outstanding debt and stated that UNIX wanted to continue working with the Plaintiff and expand the parties' business relationship.

23. Melamed represented that Defendants were about to resolve a legal action by a scheduled mediation/settlement conference, which would provide Defendants access to $5 million in funds. Plaintiff is informed and believes and thereon alleges that Melamed made this representation to induce Plaintiff to continue to provide Transportation Services for Defendants.

24. Plaintiff is informed and believes and thereon alleges that when Melamed and/or UNIX made this representation, he knew it was false because UNIX was embroiled in litigation and being countersued for $25 million in the same case. Yet, he failed to disclose this material fact. Plaintiff is informed and believes and thereon alleges that instead, Melamed and/or UNIX intended all along to retain Transportation Services from Plaintiff with no intent for UNIX to pay for these

services.

25. Plaintiff relied on Melamed's assurances and promises to Plaintiff of UNIX's purported good faith and credibility regarding paying off UNIX's debt and paying for future services and the material misrepresentation that UNIX was about to receive a large sum of money, which allowed UNIX to continue utilizing and receiving the benefits of Plaintiff's services without compensating Plaintiff for such services.

26. Plaintiff was ready to end the business relationship with UNIX due to its outstanding balance owed. However, Melamed's assurance of payment and the representation that UNIX was about to receive $5 million in a settlement caused Plaintiff to provide ongoing Transportation Services with an outstanding balance. Plaintiff would not have continued to do business with UNIX had it known Melamed failed to tell Plaintiff of the $25 million countersuit against UNIX[1]. Only after continuing to provide significant Transportation Services for UNIX, Plaintiff discovered that Melamed had misrepresented a material fact by failing to disclose that UNIX was being countersued in the same matter for damages exceeding $25 million[2].

27. Plaintiff is informed and believes and thereon alleges that while Plaintiff attempted to resolve Defendants' overdue payment for services that had already been rendered, Melamed devised a scheme to continue obtaining Transportation Services for UNIX without the intention to pay.

28. On October 17, 2024, before Plaintiff knew of the $25 million countersuit against Defendants, Mr. Admire met with Melamed in person at UNIX's facility in Southern California with UNIX's National Brand Manager, Sandra Arellano ("**Ms. Arellano**") in attendance.

---

[1] *Unix Packaging, LLC and Western Group Packaging, LLC v. BA Sports Nutrition, LLC,* No. 24STCV03219 (Cal. Superior Court County of Los Angeles, Feb. 1, 2024)

[2] *Unix Packaging, LLC and Western Group Packaging, LLC v. BA Sports Nutrition, LLC,* No. 24STCV03219 (Cal. Superior Court County of Los Angeles, Feb. 1, 2024)

29. During this meeting, Melamed continued to assure payment and Plaintiff is informed and believes and thereon alleges Melamed and/or UNIX tried to induce Plaintiff to continue doing business with UNIX, even with outstanding invoices due, by promising to perform all the following: (i) to pay invoices before Net-90, (ii) have open communication with Plaintiff at all times, and (iii) provide Plaintiff exclusivity to all of UNIX's shipments, which would have comprised of 20 or more shipments a day of work for Plaintiff (collectively "**Conditions**"). Mr. Admire and Melamed further agreed to a cost-plus 15% profit model. In consideration, Plaintiff agreed to reduce the 3% fee to 1 ½%. Melamed understood all the Conditions must be met for the reduced fee.

30. Plaintiff is informed and believes and thereon alleges that when Melamed and/or UNIX made these representations, he knew UNIX would not pay Plaintiff for Transportation Services. Plaintiff is informed and believes and thereon alleges that instead, Melamed's representation was just a ruse, and UNIX intended at the time to continue to retain Transportation Services from Plaintiff without the intent to pay while continuing to accrue outstanding invoices due.

31. Plaintiff is informed and believes and thereon alleges that because Melamed and/or UNIX represented that UNIX would pay for the Transportation Services, Plaintiff provided the services to UNIX and did not know Melamed's and/or UNIX's representation was false.

32. At no point during these negotiations did Melamed and/or UNIX disclose the material fact that UNIX was being countersued for damages exceeding $25 million.

33. Plaintiff is informed and believes and thereon alleges that for approximately two weeks after the agreement was made, Defendants remitted payment for invoices before Net-90, continued open communications with Plaintiff,

and Plaintiff provided its Transportation Services per the agreement. Nevertheless, by early November 2024, Melamed progressively reduced communication with Plaintiff and ceased making payments.

34. Mr. Admire attempted to contact Ms. Arellano and Melamed on numerous occasions with no response from either party. After Plaintiff discovered Melamed misled Mr. Admire of the pending litigation against UNIX for over $25 million, Ms. Arellano stopped tendering all shipments to Plaintiffs. Defendants ceased all communications and payments altogether.

35. On Saturday, November 16, 2024, Mr. Admire was inadvertently tagged in an email from Ms. Arellano to Ben Miller, a logistics specialist at DCAGAT Agency, soliciting transportation services when exclusivity was promised to Plaintiff.

36. To date, UNIX is wrongfully withholding $330,668.23 in payments that are past due for services already provided to it.

**FIRST CLAIM FOR RELIEF**

(Unjust Enrichment- Against Defendants)

37. Plaintiff repeats and realleges each and every allegation contained in each paragraph above and below as though the same were set forth fully herein.

38. UNIX was unjustly enriched by receiving over $330,668.23 in Transportation Services rendered by Plaintiff.

39. As a result of Defendants' wrongful conduct, Defendants have been unjustly enriched to the detriment of Plaintiff.

40. Plaintiff, therefore, demands restitution and judgment against Defendants in an amount to be determined at trial, together with interest, attorneys' fees, and the costs of this action.

///

///

## SECOND CLAIM FOR RELIEF

(Fraud – Against Defendant UNIX and Defendant Kourosh Melamed)

41. Plaintiff repeats and realleges each and every allegation contained in each paragraph above and below as though the same were set forth fully herein.

42. Plaintiff is informed and believes and thereon alleges that Melamed and/or Unix represented to Plaintiff that UNIX (i) would pay the costs associated with the Transportation Services that Plaintiff performed for UNIX and it was about to receive $ 5 million in a settlement from a case, and (ii) UNIX wanted to expand the parties' business relationship by providing Plaintiff exclusivity to all of UNIX's shipments, including a cost-plus 15% profit model.

43. Plaintiff is informed and believes and thereon alleges that when Melamed and/or UNIX made these representations, he knew of their falsity because (i) UNIX was being countersued in the same case for $25 million resulting in the high probability of no imminent $5 million in settlement money from the case, and (ii) UNIX did not intend to provide exclusivity rights to Plaintiff, because he tagged Plaintiff in an email while soliciting another company to provide Plaintiff's services.

44. Plaintiff is informed and believes and thereon alleges that Melamed and/or UNIX intended to induce Plaintiff's reliance on these misrepresentations to induce Plaintiff to provide and continue to provide Transportation Services when Melamed and/or UNIX knew that UNIX would not pay for those services.

45. Melamed's and/or UNIX's misrepresentations and/or omissions were material to Plaintiff's decision to perform the Transportation Services.

46. Plaintiff justifiably relied on these misrepresentations and/or omissions and was damaged as a result.

47. Melamed and/or UNIX has/have refused to pay Plaintiff. Instead, ignoring all outreach and soliciting transportation services from another freight

service providers when Plaintiff was promised exclusivity.

48. Plaintiff is informed and believes, and on that basis alleges, that Defendants were acting as an agent, conspirator, partner, joint venturer, alter ego, and/or employee of each other, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of the other; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

49. Plaintiff is informed and believes, and on that basis alleges, that UNIX is, and at all times mentioned herein was, owned and controlled by Melamed; that there exists, and at all times mentioned herein has existed, a unity of interest and ownership between and among UNIX and Melamed, such that any individuality and separateness of UNIX and Melamed has ceased, if ever the same existed; that UNIX is a mere shell, instrumentality and/or conduit through which Melamed has carried on his business affairs, as if UNIX did not exist; and that Melamed is the alter ego of UNIX, in that he has completely dominated and controlled the business and affairs of UNIX, has commingled the funds and assets of UNIX with his own funds and assets, has caused or allowed UNIX to be under-capitalized and/or insolvent, has withheld funds of UNIX for his own benefit and to the detriment of UNIX's creditors, has transferred assets between and among himself and UNIX for no or inadequate consideration, has directed assets from UNIX for his own use and benefit, and/or has failed to properly maintain/segregate corporate records of UNIX. Accordingly, recognizing any separate legal personage among UNIX and Melamed would sanction fraud and promote injustice.

50. Plaintiff is informed and believes and thereon alleges that as a direct,

foreseeable, and proximate result of Melamed's and/or UNIX's acts and conduct, Plaintiff has suffered and continues to suffer damages in an amount not less than $330,668.23 plus interest and any additional amounts according to proof.

51. Plaintiff is informed and believes and thereon alleges that in committing the alleged acts, Melamed and/or UNIX acted knowingly, willfully, and with oppression, fraud, and malice. Plaintiff, therefore, is entitled to receive from Melamed and/or UNIX punitive damages and attorneys' fees and costs, in such amount as shall be determined at trial.

## THIRD CLAIM FOR RELIEF

(Intentional Misrepresentation- Against Defendants UNIX and Kourosh Melamed)

52. Plaintiff repeats and realleges each and every allegation contained in each paragraph above and below as though the same were set forth fully herein.

53. Melamed and/or UNIX represented to Plaintiff that UNIX (i) would pay the costs associated with the Transportation Services that Plaintiff performed for UNIX, including UNIX was about to receive $ 5 million in a settlement from a case, and/or (ii) UNIX wanted to expand the parties' business relationship by providing Plaintiff exclusivity to all of UNIX's shipments, including a cost-plus 15% profit model.

54. Plaintiff is informed and believes and thereon alleges, when Melamed and/or UNIX made these representations, he knew of their falsity because (i) UNIX was being countersued in the same case for $25 million, resulting in the high probability of no imminent $5 million in settlement money from the case, and (ii) UNIX did not intend to provide exclusivity rights to Plaintiff, because he tagged Plaintiff in an email soliciting Plaintiff's services from another company.

55. Plaintiff is informed and believes and thereon alleges Melamed and/or UNIX intended to induce Plaintiff's reliance on these misrepresentations to induce Plaintiff to provide and continue to provide Transportation Services when Melamed

and/or UNIX knew that UNIX would not pay for those services.

56. Plaintiff is informed and believes and thereon alleges Melamed's and/or UNIX's misrepresentations of fact were made with the intent to induce Plaintiff's reliance thereon so Plaintiff would continue to provide Transportation Services to UNIX even with UNIX owing Plaintiff hundreds of thousands in unpaid invoices for services rendered.

57. Plaintiff justifiably relied on Melamed's and/or UNIX's misrepresentations of fact, causing Plaintiff damages in the form of diverted and misappropriated proceeds and/or unremitted proceeds from Defendants' product transported by Plaintiff as contracted by Defendants.

58. Plaintiff is informed and believes and thereon alleges that Plaintiff has been substantially harmed by Melamed's and/or UNIX's misrepresentations as Plaintiff has lost hundreds of thousands of dollars as a result of Melamed's and/or UNIX's conduct and has had to spend a significant amount of time, money, and resources to obtain payment for services rendered. Plaintiff is informed and believes, and on that basis alleges, that Defendants were acting as an agent, conspirator, partner, joint venturer, alter ego, and/or employee of each other, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of the other; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

59. Plaintiff is informed and believes, and on that basis alleges, that UNIX is, and at all times mentioned herein was, owned and controlled by Melamed; that there exists, and at all times mentioned herein has existed, a unity of interest and ownership between and among UNIX and Melamed, such that any individuality and separateness

of UNIX and Melamed has ceased, if ever the same existed; that UNIX is a mere shell, instrumentality and/or conduit through which Melamed has carried on his business affairs, as if UNIX did not exist; and that Melamed is the alter ego of UNIX, in that he has completely dominated and controlled the business and affairs of UNIX, has commingled the funds and assets of UNIX with his own funds and assets, has caused or allowed UNIX to be under-capitalized and/or insolvent, has withheld funds of UNIX for his own benefit and to the detriment of UNIX's creditors, has transferred assets between and among himself and UNIX for no or inadequate consideration, has directed assets from UNIX for his own use and benefit, and/or has failed to properly maintain/segregate corporate records of UNIX. Accordingly, recognizing any separate legal personage among UNIX and Melamed would sanction fraud and promote injustice.

60. As a result of Melamed's and/or UNIX's misrepresentation, Plaintiff has been damaged in the amount of not less than $330,668.23, plus interest.

61. Plaintiff is informed and believes and thereon alleges that in addition to recovering compensatory damages and other relief requested herein, Plaintiff is entitled to recover punitive damages from Defendants pursuant to Cal. Code Civ. Proc. § 3294.

## FOURTH CLAIM FOR RELIEF

(Negligent Misrepresentation- Against Defendants UNIX and Kourosh Melamed)

62. Plaintiff repeats and realleges each and every allegation contained in each paragraph above and below as though the same were set forth fully herein.

63. Plaintiff is informed and believes and thereon alleges Melamed and/or UNIX made misrepresentations to Plaintiff concerning UNIX's ability and intentions to pay the long overdue and more current invoices and for future services. Melamed and/or UNIX made a misrepresentation that UNIX was about to receive $5 million from a settlement but failed to disclose that UNIX was being countersued

in the same case for 25 million.

64. Plaintiff is informed and believes and thereon alleges Melamed and/or UNIX made false misrepresentations negligently, without reasonable care, and without reasonable grounds for believing them to be true because he knew UNIX was being countersued for $25 million. These representations to Plaintiff were made without any basis for believing their truth.

65. Plaintiff is informed and believes and thereon alleges Melamed's and/or UNIX's misrepresentations of fact were made with the intent to induce Plaintiff's reliance thereon so Plaintiff would continue to provide Transportation Services to UNIX even with UNIX owing Plaintiff hundreds of thousands in unpaid invoices for services rendered.

66. Plaintiff justifiably relied on Melamed's and/or UNIX's misrepresentations of fact, causing Plaintiff damages in the form of diverted and misappropriated proceeds and/or unremitted proceeds from Defendants' product transported by Plaintiff as contracted by Defendants.

67. Plaintiff is informed and believes and thereon alleges that Plaintiff has been substantially harmed by Melamed's and/or UNIX's misrepresentations as Plaintiff has lost hundreds of thousands of dollars as a result of Melamed's and/or UNIX's conduct and has had to spend a significant amount of time, money, and resources to obtain payment for services rendered.

68. As a result of Melamed's and/or UNIX's negligent misrepresentation, Plaintiff has been damaged in the amount of not less than $330,668.23, plus interest.

69. Plaintiff is informed and believes and thereon alleges that in addition to recovering compensatory damages and other relief requested herein, Plaintiff is entitled to recover punitive damages from Defendants pursuant to Cal. Code Civ. Proc. § 3294.

**FIFTH CLAIM FOR RELIEF**

(Breach of Contract- Against All Defendants)

70. Plaintiff repeats and realleges each and every allegation contained in each paragraph above and below as though the same were set forth fully herein.

71. Defendants entered into a valid, enforceable contract for a lawful objective pursuant to which Plaintiff would load, transport, and deliver Defendants' products to various destinations and receivers designated by Defendants in exchange for agreed upon valuable consideration memorialized in Plaintiff's invoices and terms to Defendants.

72. Plaintiff fully performed its obligations pursuant to the Agreement.

73. Defendants breached the Agreement by repeatedly failing to remit payment on Plaintiff's invoices despite Defendants' promises and assurances that payment would be remitted in full.

74. As a direct, foreseeable, and proximate result of the breaches of the contract by Defendants and Defendants' acts and conduct, Plaintiff has suffered and continues to suffer damages in an amount not less than $330,668.23 plus interest and any additional amounts according to proof.

**PRAYER FOR RELIEF**

75. Plaintiff repeats and realleges each and every allegation contained in each paragraph above and below as though the same were set forth fully herein.

76. Plaintiff prays for judgment in its favor on the causes of action set forth above and award Plaintiff relief including, but not limited to, the following:

a. Compensatory damages in an amount to be proven at trial but in excess of $330,668.23;

b. Exemplary damages for UNIX's and/or Melamed's intentional, malicious, and/or willful conduct, according to proof;

c. Restitution and disgorgement of any unjust enrichment caused by Defendant's actions alleged herein;

d. Pre-judgment and post-judgment interest at the maximum legal rate:

e. Reasonable attorneys' fees and costs incurred in bringing and litigating this action as allowed by law;

f. Punitive damages against UNIX and/or Melamed in an amount to be fully determined at trial, including but not limited to exemplary damages under Cal. Civ. Code § 3426.3(c); and

g. All such other remedies or equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: February 14, 2025

Respectfully Submitted,

RAINEY LAW P.C.

_/s/_Ingrid M. Rainey___________
Ingrid M. Rainey, Esq.
Attorneys for Plaintiff
Freight Essentials, LLC